CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED Danville
SEP 16 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DERECK BOTTOMS, | ) | CASE NO. 4:12CV00048 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By:  B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's

November 2, 2009 protectively-filed applications for a period of disability, disability insurance

benefits, and supplemental security income under the Social Security Act ("Act"), as amended,

42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C.

§ 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate

findings, conclusions, and recommendations for the disposition of the case. The question

presented is whether the Commissioner's final decision is supported by substantial evidence. 42

U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order

enter DENYING the Commissioner's motion for summary judgment, GRANTING, in part, the

plaintiff's motion for summary judgment, and REMANDING this case to the Commissioner for

further proceedings.

In a decision dated August 23, 2011, an Administrative Law Judge ("Law Judge") found

that plaintiff had not engaged in substantial gainful activity since September 1, 2008, his alleged

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

date of disability onset.[2] (R. 12.) The Law Judge determined plaintiff's cognitive disorder not otherwise specified, personality disorder, and history of substance abuse were severe impairments. (R. 12.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 13.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform the full range of work except that he had moderate limitations in his ability to handle detailed instructions and engage in sustained concentration. (R. 14.)

The Law Judge relied on portions of the testimony of Dr. Sandra Wells-Brown, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 17, 31-39.) Based on this testimony, the Law Judge determined that plaintiff was able to perform his past relevant work as a janitor. (R. 17, 32-33.) The Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's August 23, 2011 decision to the Appeals Council. (R. 1-9.) In its September 24, 2012 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir.

---

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, which was December 31, 2012. *See* 20 C.F.R. § 404.131(a); (R. 12.) Supplemental security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.

1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

Plaintiff seeks reversal or remand on three grounds. First, he asserts that the Law Judge improperly relied on VE testimony to determine whether he could perform his past relevant work. (Dkt. No. 16, at 8-9.) Second, he alleges that the Law Judge did not pose a hypothetical to the VE which properly considered all of his mental limitations. (Dkt. No. 16, at 9-11.) Finally, he argues that the Law Judge's finding that he does not suffer a severe physical impairment is not supported by substantial evidence. (Dkt. No. 16, at 11-13.)

Plaintiff's alleged onset date of disability is September 1, 2008, when he ceased working due to memory loss and back pain. Plaintiff claims that he suffers from pain in his upper back subsequent to having been stabbed at some point in 2004. (R. 24.) Dante Bruno, M.D., has treated plaintiff for back pain since November of 2006, two years prior to his alleged onset date. Plaintiff reported to Dr. Bruno on his initial visit that his back pain had previously been treated with therapy and Percocet. (R. 333.) Dr. Bruno prescribed Percocet to plaintiff, refilling his prescription on December 22, 2006, January 16, 2007, and January 27, 2007. (R. 332-334.) In October of 2007, plaintiff was living in Philadelphia and suffered a serious head injury resulting from being hit over the head with a pistol and remaining unconscious in his home for a week. (R.

23-24, 299-300.) Plaintiff then lived with his sister in Washington, D.C., before he returned to Danville, Virginia, in 2009.

On November 17, 2009, plaintiff was treated by Dr. Bruno for chronic back pain. (R. 331.) Dr. Bruno prescribed Percocet at that time and refilled this prescription during visits on December 7, 2009, and January 4, 2010. (R. 330-331.) On April 1, 2010, plaintiff was prescribed medication for his hypertension and Percocet for his back pain. (R. 330.) Plaintiff was not able to fill his prescription at that time because he did not have the four dollars required. (R. 328.) On May 7, 2010, plaintiff was again prescribed medication for his blood pressure and Percocet for his back pain, but did not pick up his blood pressure medication. (R. 328-329.)

On April 22, 2010, plaintiff was seen by Ericka Young, D.O. for a consultative examination (CE). Dr. Young diagnosed plaintiff with memory loss secondary to physical assault and back pain. (R. 301.) She noted that plaintiff had adequate thought processing ability, but that he suffered an impaired short-term memory as plaintiff was unable to remember three one-syllable words after one minute. (R. 300.) Dr. Young observed that plaintiff displayed a normal range of motion, a normal finger-to-nose test, and was able to walk on his toes. However, plaintiff's heel-to-knee test was abnormal, and he was unable to walk on his heels. (Id.) Plaintiff's motor strength and grip were both 5/5 bilaterally, but his manual dexterity was 4/5 bilaterally. Dr. Young opined that this difficulty was mentation related. (R. 300-301.) Dr. Young noted that plaintiff suffered no radiculopathy, but that there was a positive scar on his head consistent with an assault.[3] (R. 299-300.) She opined that, due to back pain, plaintiff was limited to standing or walking six hours in an eight hour day, would need to get up from sitting every three to four hours, could lift twenty pounds frequently and twenty-five pounds

_____

[3] The record indicates that plaintiff underwent an x-ray of his lumbar spine on April 15, 2010, which revealed only mild degenerative changes.

occasionally, and had frequent postural limitations with bending as well as occasional postural limitations with sitting and crouching. (R. 301.) Dr. Young noted that plaintiff's postural limitations were due both to his obesity and his back pain. (*Id.*) Dr. Young recommended that plaintiff use a cane on uneven terrain because of observed balance issues, and opined that, as a result of his slow mentation, plaintiff suffered manipulative limitations with fine motor movements and should not drive, climb, or work around heavy machinery. (R. 301.)

On June 3, 2010, the Cooperative Disability Investigations Unit conducted surveillance of plaintiff in connection with his claim of disability due to memory loss. (R. 204.) The agents observed plaintiff walk from a parked vehicle in which he had been a passenger to a medical building and then return to the vehicle. (R. 205.) The vehicle then proceeded to another location, where the agents observed plaintiff filling out medical forms with the help of the driver. (*Id.*) The agent observed plaintiff reading various magazines, and noted that he was dressed appropriately, did not appear depressed, tired, or fatigued, was steady on his feet and entered the building without difficulty, and did not display any bizarre behaviors or mannerisms. (*Id.*) The agent opined that plaintiff's "reported limitations were not congruent with the investigation conducted." (R. 204.)

On June 3, 2010, plaintiff was evaluated by Dr. Frank Russell, a psychologist, in connection with a psychological consultative examination. Dr. Russell diagnosed plaintiff as suffering a cognitive disorder, not otherwise specified, and antisocial personality disorder. (R. 310.) He also diagnosed alcohol and opioid dependence, but noted that those were in sustained full remission. (*Id.*) On examination, plaintiff's immediate auditory memory, recent memory, judgment or common sense, and insight were fair, and his fund information was poor, but his remote memory, calculation ability, and abstract thinking ability were good. (R. 308-309.) Dr.

Russell opined that plaintiff's ability to perform detailed and complex tasks was moderately impaired, noting that "he had some difficulty with immediate auditory memory." (R. 309.) Dr. Russell stated that plaintiff would be capable of maintaining regular attendance in the workplace and performing simple and repetitive tasks on a consistent basis, but that he likely needed some support in dealing with the usual stressors of the workplace. (R. 309-310.) Dr. Russell opined that there was no evidence of malingering, and observed that, with plaintiff's head injury and extensive drug use, it was not surprising that plaintiff's cognitive functioning was compromised. (R. 309-310.)

On July 6, 2010, plaintiff saw Dr. Bruno, who again prescribed Percocet for plaintiff's back pain as well as blood pressure medication. (R. 329.) On July 29, 2010, plaintiff received a renewal for both his Percocet and his blood pressure medication, but he did not fill the prescription for his blood pressure medicine. (R. 327.) The notes from the visit indicate that plaintiff was leaving town to visit his family shortly thereafter. (*Id.*) On January 24, 2011, plaintiff was examined by Dr. Bruno, who diagnosed him with hypertension and back pain. (R. 337.) Dr. Bruno's physical exam did not note any abnormal findings, but Dr. Bruno again prescribed Percocet and blood pressure medication. (R. 336.)

Plaintiff relies on *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987), to argue that it was improper for the Law Judge to use the testimony of the VE to find plaintiff retained the capacity to perform his past relevant work. The Commissioner points out that the regulations were amended in 2003 to allow a VE to testify regarding a claimant's past relevant work. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); Dkt. No. 20, at 15. The court has recognized in prior cases that the new regulations were amended to supersede the decision in *Smith v. Bowen. See Daniels v. Astrue*, No. 2:06cv00034, 2007 WL 2126395, *5 fn. 7 (W.D. Va. July 23, 2007); *Prim v.*

*Astrue*, No. 7:07cv213, 2008 WL 444537, *7 fn. 5 (W.D. Va. Feb. 13, 2008); *Breeden v. Astrue*, No. 5:11cv110, 2012 WL 6547658, *6 (W.D. Va. Dec. 14, 2012). Accordingly, the Law Judge may rely on the testimony of the VE in determining whether plaintiff could perform his past relevant work, and it was not error for him to do so here.

Plaintiff next asserts that the Law Judge erred by not posing hypothetical questions to the VE which fully accounted for all of his mental limitations. The Law Judge found that plaintiff possessed the RFC to perform the full range of work with no limitation on his ability to handle short and simple instructions, but with moderate limitations on his abilities to handle detailed instructions and engage in sustained concentration. (R. 14.) The Law Judge's first hypothetical to the VE encompassed only these mental limitations and no physical limitations. (R. 33.) Plaintiff asserts that this hypothetical did not adequately account for the full range of limitations assessed by either Dr. Russell or Dr. Young, the consultative examiners.

Dr. Russell assessed that the plaintiff was capable of "simple and repetitive tasks," but that he likely would "need some support to deal with the usual stressors encountered in a competitive workplace." (R. 310.) The Law Judge acknowledged this evidence and accorded them "partial weight, to the extent it is consistent with the above residual functional capacity assessment." (R. 16.) However, the Law Judge did not provide an explanation for according only partial weight to Dr. Russell's opinion.

The record is unclear as to the degree of help plaintiff would require in view of Dr. Russell's assessment. The VE testified that the need for a part-time job coach would preclude competitive employment, but that "a little extra supervision by their regular supervisor" would not preclude employment. (R. 39.) It is not explained in the Law Judge's decision whether he chose to interpret Dr. Russell's assessment to mean only that extra supervision would be

required. Given the absence of evidence contradicting Dr. Russell, the Law Judge does not appear to have had a substantial basis to discount his opinion, and, to the extent he did, the Law Judge was exercising an expertise he did not have. Good cause exists to remand this case for that reason.

Furthermore, the Law Judge's hypothetical to the VE does not adequately take into account Dr. Russell's opinion that plaintiff would be limited to only simple and repetitive tasks. Instead, the Law Judge found that plaintiff experienced moderate limitations with regard to detailed instructions and sustained concentration. (R. 14.) The word repetitive does not appear in any of the hypotheticals posed to the VE. Although the Fourth Circuit has not explicitly addressed this issue, lower courts within the Fourth Circuit have consistently held that "simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work." *Walls v. Astrue*, No. 1:11cv318, 2013 WL 954361, *4 (W.D.N.C. Feb. 22, 2013) (quoting *McClendon v. Astrue*, No. 1:10cv411, 2012 WL 13525, *7 (M.D.N.C. Jan. 4, 2012)). *See also Powell v. Astrue*, No. 6:09cv900, 2010 WL 3168308, *16 (D.S.C. May 4, 2010), *Hardy v. Colvin*, No. 11-02793, 2013 WL 4478025, *3 (D. Md. Aug. 19, 2013). It is the undersigned's view that the Law Judge's hypothetical failed to take into account all of the uncontroverted limitations set forth by Dr. Russell. Because it is unclear whether plaintiff could perform his past relevant work if he were limited to simple and repetitive tasks, the case should be remanded on these grounds for further proceedings.

Dr. Young, who conducted a consultative examination (CE), opined as to plaintiff's mental status and capacities. She noted that plaintiff suffered memory loss based on a test in which plaintiff was asked to repeat three one-syllable words after a minute. (R. 300.) Plaintiff was unable to remember any of the words. (*Id.*) Dr. Young also observed during the test of

plaintiff's motor strength that there was "a slight sluggishness in plaintiff's mentation." (R. 301.) As a result, she opined that plaintiff suffered limitations in fine motor movements and recommended that plaintiff not drive, climb, or work around heavy machinery. (*Id.*) It appears the Law Judge did ask the VE to assume limitations in fine motor movement, but he never asked the VE to consider proscriptions against or limitations on driving, climbing, and working around heavy machinery. The reasons for this are never explained, and if it was because he accorded little weight to Dr. Young's evidence, he needed to say so and provide the reasons for his determination.

This, in turn, relates directly to plaintiff's third assignment of error, which is that the Law Judge's finding that none of plaintiff's physical limitations were severe impairments is not supported by substantial evidence. Both Dr. Bruno and Dr. Young diagnosed plaintiff as suffering back pain, and Dr. Bruno prescribed Percocet to treat plaintiff's chronic back pain. There is no medical evidence contraindicating either the diagnosis or the treatment prescribed.

The Law Judge rejected plaintiff's claim of chronic back pain and found it not to be a severe impairment. He further found that such a claim was inconsistent with the objective findings in the record. The Law Judge opined that Dr. Young "appeared to base such limitations solely on the claimant's subjective allegations." (R. 13.) He rejected her diagnosis because she "gave the impression of a claimant who was limited in mobility, even though he had no regular treatment, no abnormalities in range of motion, and minor x-ray findings." (R. 16-17.) While the Law Judge correctly pointed out that plaintiff was able to walk on his toes, he failed to recognize that the heel-to-knee test was abnormal, and that plaintiff was unable to walk on his heels. (R. 300.) Furthermore, the x-ray showing only minor degenerative changes is of plaintiff's lumbar spine. (R. 303.) Plaintiff has asserted pain in his upper back due to a stab wound, not pain in his

9

lower back due to degenerative disc disease. (R. 24.) The Law Judge found that the plaintiff "has no record of regular and consistent low back treatment." (R. 16.) While the records from Dr. Bruno are lacking minimal, they show that plaintiff saw his physician every few months and received medication. Plaintiff did not receive treatment from Dr. Bruno between January 2007 and November 2009, but he was not even living in Virginia during that time. (R. 305.) It seems the Law Judge determined that, because there were normal objective lower back findings, then plaintiff suffered no severe upper back impairment. This is essentially like saying that because there are no foot impairments, the upper leg must also be unimpaired.

Furthermore, when a condition which reasonably could cause pain has been established by objective evidence, the Law Judge must evaluate the credibility of the plaintiff's subjective complaints of pain. Plaintiff has demonstrated here that he suffers pain in his back due to being stabbed. Plaintiff's doctors certainly believed that this was a condition which reasonably could cause plaintiff's pain, therefore placing before the Law Judge plaintiff's credibility regarding the intensity, persistence, and limiting effects of his pain. While the Law Judge assessed plaintiff's activities of daily living at step three of the sequential evaluation in determining whether any of plaintiff's impairments met a listing, he does not suggest that these activities undermine plaintiff's credibility regarding the effects of his back pain and memory loss at any other step of the sequential evaluation. That failing, the undersigned cannot conclude the Law Judge's decision to discount plaintiff's allegations of back pain is supported by substantial evidence. Good cause exists on this basis alone to remand the case for further proceedings in order to afford the Commissioner an opportunity to assess plaintiff's credibility and then to reassess plaintiff's RFC in light of the all the circumstances of this case, including the objective evidence contained in the medical record.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING, in part, and DENYING, in part the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings to reassess plaintiff's credibility, his residual functional capacity, and the weight to be accorded plaintiff's examining sources.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

_9-16-2013_
Date